**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **HARTFORD FIRE INSURANCE CO.**<br>**One Hartford Plaza T-4**<br>**Hartford, CT 06155**<br><br>        **Plaintiff,**<br><br>**v.**<br><br>**VISTA CONTRACTING, INC.**<br>**6820 Commercial Drive, Room D**<br>**Springfield, VA 22151**<br><br>    **Serve Registered Agent:**<br>    **Incorp Services, Inc.**<br>    **1090 Vermont Avenue NW**<br>    **Suite 910**<br>    **Washington DC 20005**<br><br>**STJEPAN SOSTARIC**<br>**3709 George Mason Drive**<br>**Falls Church, VA 22041**<br><br>**NANCY SOSTARIC**<br>**330 A Street SE**<br>**Washington, DC 20003**<br><br>        **Defendants.**<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)    **Case No. _____**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT**

COMES NOW Plaintiff Hartford Fire Insurance Company ("Plaintiff" or "Hartford"), by

its undersigned counsel, and hereby brings this action against Vista Contracting, Inc. ("Vista"),

Stjepan Sostaric, and Nancy Sostaric (collectively, "Defendants" or "Indemnitors"). In support

thereof, Hartford states as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and complete diversity exists between Plaintiff and Defendants.

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this claim occurred in this judicial district.

3.      The claims for relief alleged in this Complaint are for breach of a contract of indemnity, specific performance of the indemnity agreement, *quia timet*, injunctive relief, declaratory relief, and other equitable relief affecting property and involving persons within the jurisdiction of this Court.

## PARTIES

4.      Hartford is a corporation organized and existing under the laws of the state of Connecticut, with its principal place of business at One Hartford Plaza, Hartford, Connecticut 06155. Hartford is an insurance company engaged in the business of marketing and selling insurance products, including underwriting surety bonds.

5.      Vista is a corporation organized and existing under the laws of the District of Columbia, with a principal place of business at 6820 Commercial Drive, Room D, Springfield, Virginia 22151. Vista is engaged in business as a general contractor for building and renovation projects.

6.      Stjepan Sostaric maintains a residence at 3709 George Mason Drive, Falls Church, Virginia 22041. He was the President of Vista for all times relevant to this claim, and executed as an individual indemnitor a General Indemnity Agreement ("GIA") in favor of Hartford.

2

7.      Nancy Sostaric maintains a residence at 330 A Street Southeast, Washington, District of Columbia 20003. She also executed as an individual indemnitor the same GIA in favor of Hartford.

## FACTS AND BACKGROUND

8.      This matter arises from Defendants' execution of the GIA in favor of Hartford and Defendants' subsequent breach of the GIA. As a direct result of Defendants' actions, Hartford has incurred significant direct costs and faces claims in an amount in excess of $111,389, plus attorneys' fees and interest that continue to accrue.

### *General Indemnity Agreement*

9.      All three Defendants executed the GIA in favor of Hartford, effective June 30, 2010. A true and correct copy of the GIA is attached hereto as **Exhibit A** and is hereby incorporated by reference as if fully set forth herein.

10.     Defendants executed the GIA in exchange for, among other things, Hartford's issuance of surety bonds on behalf of or at the request of Defendants in connection with contracts awarded to Defendants by various state and government entities.

11.     Paragraph 1(a) of the GIA defines "Indemnitor" as follows:

> "Indemnitor" shall include, among others, each and every one of the following persons or entities on behalf of itself and all of its existing or prospective heirs, personal representatives, executors, administrators, parent companies, purchasers, successors (through asset acquisition or otherwise), assigns, related entities, co-venturers, joint ventures, affiliates, subsidiaries, divisions, and marital communities along with any entity (whether partially or wholly owned and/or controlled) of whatever description and whenever formed or acquired in which any of the foregoing persons or entities have an ownership or beneficial interest. Indemnitor shall also include any Principal.

(Ex. A ¶ 1(a).) Paragraph 1(a) then lists the three Defendants, with their contemporaneous addresses and federal tax ID/Social Security Numbers, as Indemnitors.

12.     Paragraph 1(e) defines "Loss" as follows:

> "Loss" shall include all manner of losses, costs, expenses or fees of any kind of nature which are paid or incurred by Hartford as a result of or in any way relating to the entering into and enforcement of this Agreement or the Underwriting of any Bonds. Loss shall include, without limitation, any and all expenditures relating to Hartford's financial investigations, claim investigations, claim payments, payments to discharge liability and Bond related litigation of any nature, legal, expert, administrative, consultant and other professional fees and costs, court costs, travel expenses, unpaid premiums, unpaid loans which may be extended to, or guaranteed for or on behalf of any Indemnitor and interest on sums expended at the maximum lawful rate. Loss shall be determined broadly in favor of Hartford.

(Id. ¶ 1(e).)

13.     Paragraph 5 of the GIA provides that "Indemnitors shall at all times indemnify, exonerate and hold Hartford harmless from and against all Loss, claims, demands, liabilities, suits and causes of action which are in any way related to any Underwriting activities, Bonds or this Agreement." (Id. ¶ 5.)

14.     Paragraph 6 of the GIA states:

> Upon Hartford's demand, the Indemnitors shall immediately deposit with Hartford funds, as collateral, in an amount Hartford deems necessary at the time of said demand to protect itself from actual or anticipated Loss. Demand may be made as soon as a) Hartford determines that liability exists; or b) Hartford has a reasonable basis to believe that it may incur liability or Loss; or c) in the event any Indemnitor diverts contract funds relating to any Bond in violation of Paragraph 11 of this Agreement or applicable law; or d) in the event Hartford deems itself insecure, whether or not Hartford has made any payment or established any reserve and whether or not it has received notice of, accepted or denied any claim in whole or in part.

(Id. ¶ 6.)

15.     Paragraph 6 of the GIA also provides for injunctive relief for Hartford:

> The Indemnitors acknowledge and agree that their failure to immediately deposit with Hartford any sums demanded under this section shall cause irreparable harm to Hartford for which it has no adequate remedy at law. Indemnitors agree and shall stipulate in any legal proceeding that Hartford is entitled to injunctive relief for specific performance of said collateral deposit obligation and do hereby expressly waive and relinquish any claims or defenses to the contrary.

(Id.)

16.     Paragraph 15 also addresses equitable remedies:

> The Indemnitors acknowledge and agree that their failure to immediately perform any obligation or requirement of this Agreement shall cause irreparable harm to Hartford for which there is no adequate remedy at law and the Indemnitors shall upon Hartford's demand stipulate, either directly or through the attorney-in-fact provision, that Hartford is entitled to all manner of equitable relief including, without limitation, specific performance and injunctive relief in addition to the relief otherwise afforded by this Agreement or at law.

(Id. ¶ 15.)

17.     Paragraph 11 of the GIA states:

> If a Bond is Underwritten in connection with the performance of any contract, the entire contract price shall be dedicated to the satisfaction of the obligations of the Bond and this Agreement. All money paid or any securities, warrants, checks or evidences of debt given under contracts relating to or for which a Bond has been issued shall be impressed with a trust for the purpose of satisfying the obligations of the Bond Underwritten for said contract and this Agreement and shall be used for no other purpose until all such obligations have been fully satisfied.

(Id. ¶ 11.)

18.     Paragraph 14 of the GIA, entitled "Joint, Several and Continuing Obligations,"

dictates that the "Indemnitors' obligations under this Agreement are joint, several and

continuing. Hartford shall not be required to enforce or exhaust its rights or remedies against any one or more Indemnitors before asserting its rights against any other Indemnitors." (Id. ¶ 14.)

### *Bonds Issued by Hartford in Connection with Vista Contracts*

19.    In connection with the contract the Bureau of Engraving and Printing ("BEP") awarded to Vista (the "BEP Contract") for the D Wing 4th Floor Site Preparation Project (the "BEP Project"),  Hartford furnished payment and performance bonds with Vista as the principal on said bonds, copies of which are attached hereto as **Exhibit B** (the "BEP Bonds").

20.    The site for the BEP Project is located in the Main Building of BEP at 14th and C Streets, S.W., Washington, DC 20228-0001.

21.    In connection with the contract Virginia Railway Express ("VRE") awarded Vista (the "VRE Contract") for construction of Franconia-Springfield Station Rehabilitation Project ("the VRE Project"), Hartford furnished payment and performance bonds with Vista as the principal on said bonds, copies of which are attached hereto as **Exhibit C** ("VRE Bonds").

22.    The site for the VRE Project is located at the Franconia-Springfield Metro Station in Springfield, Virginia.

23.    Both the BPE Contract and the VRE Contract required Vista to furnish payment and performance bonds for Vista's work.

24.    Hartford furnished the BEP Bonds and the VRE Bonds (collectively, the "Bonds") in reliance upon the GIA executed by the Defendants.

### *Escrow Agreement for the BEP Project*

25.    As a condition precedent to Hartford's underwriting of the BEP Bonds for the BEP Project, Hartford required Vista to assign all contract payments to an escrow account

maintained by Beacon Financial Acquisition Corporation ("Beacon"), a division of North American Construction Services, Inc. ("NACSI").

26.     Accordingly, on or about June 27, 2011, Vista, NACSI and Hartford entered into an Escrow Agreement and Addendum thereto ("Escrow Agreement") and Vista executed an Assignment as Additional Security to the Escrow Agreement ("Assignment").  Pursuant to the Escrow Agreement and Assignment, BEP was required to transmit payment for Vista's work to an escrow account maintained by Beacon, and Vista assigned all amounts due or owing by BEP or that may be due or owing in the future by BEP to Beacon.  True and correct copies of the Escrow Agreement and Assignment are attached hereto as **Exhibit D** and **Exhibit E**, respectively, both of which are hereby incorporated by reference as if fully set forth herein.

27.     Beacon gave notice of the assignment to BEP on June 27, 2011. A true and correct copy of the Notice of Assignment to BEP is attached hereto as **Exhibit F** and is hereby incorporated by reference as if fully set forth herein.

### *Notice of Bond Liability and Vista's First Default*

28.     Upon information and belief, Vista experienced issues with its performance and/or ability to pay its subcontractors and suppliers on the BEP and VRE Projects.

29.     Hartford received multiple payment bond claims against the Bonds furnished for the BEP and VRE projects and incurred significant bond liability and litigation costs.

30.     As of December 1, 2014, Hartford had incurred $40,905.12 in costs arising from the Bonds and faced additional liability due to $226,740.66 in outstanding payment bond claims at the time.

31.     By letter dated December 1, 2014, Hartford notified Vista and the Sostarics of the costs incurred and potential liability on each of the Bonds and Hartford demanded that the

Indemnitors deposit, by December 12, 2014, $272,145.78 in collateral pursuant to Paragraph 6 of the GIA. A true and correct copy of Hartford's letter is attached hereto as **Exhibit G** and is hereby incorporated by reference as if fully set forth herein.

32.     The Defendants failed to respond to Hartford's December 1, 2014 letter, thereby defaulting under the terms of the GIA.

### *Misappropriation of the BEP February 24, 2015 Payment*

33.     On or about February 24, 2015, BEP erroneously directed a payment in the amount of $84,527.72 to a Vista bank account, rather than the Beacon escrow account, as required by the Escrow Agreement and Assignment (the "BEP February 24, 2015 Payment").

34.     On or about March 20, 2015, Vista admitted it received the BEP February 24, 2015 Payment and Hartford demanded return of the BEP February 24, 2015 Payment to Beacon pursuant to the terms of the Escrow Agreement.

35.     Despite Hartford's demands and the requirement of the Escrow Agreement and Assignment, Vista represented to Hartford on or about March 26, 2015 that Vista did not have sufficient funds to return to Beacon the amount of the BEP February 24, 2015 Payment ($84,527.72).

### *Vista's Second Default*

36.     By letter dated April 7, 2015, counsel for Hartford notified Defendants that all three Indemnitors were in default under the GIA and the Escrow Agreement for Vista's misappropriation of the BEP February 24, 2015 Payment and the Indemnitors' failure to deposit collateral with Hartford in accordance with Hartford's December 1, 2014 letter. A true and correct copy of the April 7, 2015 letter is attached hereto as **Exhibit H** and is hereby incorporated by reference as if fully set forth herein.

37.     The April 7, 2015 letter also requested that the Indemnitors (i) provide updated project accounting records; (ii) provide access to project financial information to Hartford; and (iii) provide the collateral demanded in the December 1, 2014 letter along with an additional $100,000 to cover the payment misappropriated by Vista, plus costs and legal fees.

38.     On or about April 20, 2015, BEP issued another payment in the amount of $84,527.72 for deposit into the Beacon escrow account and, by check dated October 15, 2015, Vista paid Hartford the same amount.

39.     Otherwise, Defendants have failed to cure their defaults or to formally or adequately respond to the December 1, 2014 and April 7, 2015 letters referenced above (and attached hereto), nor have Defendants deposited collateral pursuant to Hartford's demands and as required by the GIA.

40.     Hartford has incurred and will continue to incur costs and expenses as a direct consequence of providing the Bonds to Defendants and due to Defendants' failure to comply with their obligations under the GIA and the Escrow Agreement.

41.     In light of Defendants' accumulating contract performance issues, their poor financial outlook, and lack of cooperation with Hartford's efforts to remediate these issues, Hartford has reasonable grounds to anticipate significant future litigation on the Bond issued on behalf of Vista for the BEP Project.  Specifically, Hartford has an outstanding payment bond reserve balance on the BEP Project in the amount of $76,979, which represents Hartford's anticipated exposure for future payment bond claims that may be received on the BEP Project.

## COUNT I
### BREACH OF INDEMNITY AGREEMENT

42.     Hartford incorporates by reference Paragraphs 1 through 41 as though fully set forth herein.

43.     Paragraph 5 of the GIA obligates the Defendants, as Indemnitors, to "at all times indemnify, exonerate and hold Hartford harmless from and against all Loss, claims, demands, liabilities, suits and causes of action which are in any way related to any Underwriting activities, Bonds or this Agreement."

44.     To date, Hartford has incurred significant expenses for, among other things, investigating, litigating, and/or settling actual and potential claims on the Bonds and for pursuing Hartford's rights under the GIA, including but not limited to preparing and filing this Complaint and associated filings.

45.     Defendants have breached their obligations to indemnify Hartford for any costs incurred as a result of the Bonds or the defaults of Defendants under the GIA.

46.     Paragraph 6 of the GIA requires the Defendants to deposit collateral to protect Hartford from actual or anticipated losses: "Upon Hartford's demand, the Indemnitors shall immediately deposit with Hartford funds, as collateral, in an amount Hartford deems necessary at the time of said demand to protect itself from actual or anticipated Loss."

47.     Hartford demanded collateral pursuant to Paragraph 6 of the GIA via letters to the Indemnitors dated December 1, 2014, and April 7, 2015.

48.     Defendants have failed to deposit collateral with Hartford and have failed to otherwise fully cure its defaults.

49.     Paragraph 11 of the GIA requires Vista to dedicate all contract funds to satisfaction of its obligations under the Bonds and the GIA. All payments "shall be impressed with a trust for the purpose of satisfying the obligations of the Bond Underwritten for said contract and this Agreement and shall be used for no other purpose until all such obligations have been fully satisfied." (Ex. A. ¶ 11.)

50.     Vista received the BEP February 24, 2015 Payment and initially refused to return the BEP February 24, 2015 Payment to Beacon in accordance with the Escrow Agreement. Ultimately, the escrow account was reimbursed for the misdirected payment, but only after Vista defaulted under the terms of the Escrow Agreement.

51.     As described above, Defendants have breached the GIA by failing to indemnify Hartford, failing to provide the collateral Hartford demanded pursuant to the GIA, and misappropriating the BEP February 24, 2015 Payment for purposes other than performance of the BEP Project.

52.     Due to the Defendants' myriad and ongoing breaches of the GIA, Hartford has incurred and continues to incur substantial costs and damages, and Hartford will continue to incur additional substantial costs and damages as a result of issuing the Bonds to Vista.

53.     Any and all conditions precedent to bringing this action have been satisfied or waived.

WHEREFORE, Hartford respectfully requests this Court enter judgment in favor of Hartford and against Defendants, jointly and severally, for $111,389, or such amount to be proven at trial, plus costs, interest, and attorney's fees that continue to accrue as provided for by the GIA, and to grant such additional relief as this Court deems just and proper under the circumstances.

## COUNT II
### SPECIFIC PERFORMANCE

54.     Hartford incorporates by reference Paragraphs 1 through 53 as though fully set forth herein.

55.     To date, as detailed above, Defendants have failed to comply with their obligations under the GIA by failing to indemnify Hartford, failing to deposit the collateral

Hartford demanded pursuant to the GIA, and failing to maintain contract funds for the purpose of fulfilling Vista's obligations under the Bonds and the GIA.

56.     As a direct result of Hartford's issuance of the Bonds to Vista in connection with the GIA, Hartford has become subject to claims, litigation, and actual and potential liability to multiple claimants.

57.     To date, Hartford has incurred significant expenses for, among other things, investigating, litigating, and/or settling actual and potential claims on the Bonds and for pursuing Hartford's rights under the GIA, including but not limited to preparing and filing this Complaint and associated filings.

58.     To date, and due to Defendants' breaches of the GIA, Hartford has incurred $111,389 in losses and expenses under the Bonds

59.     Hartford also anticipates additional potential liability of approximately $76,979 under the BEP Bonds.

60.     Defendants' conduct to date illustrates Defendants' pattern of attempting to avoid their obligations under the GIA, to include failing to provide the collateral demanded or to indemnify Hartford.

61.     Hartford reasonably believes Defendants' financial situations create an imminent risk that, absent a court order, Defendants will continue to refuse to indemnify Hartford and to provide collateral to Hartford.

62.     Hartford estimates that its liability as a consequence of providing Bonds to Vista, and as a consequence of Defendants' breaches of the GIA, will exceed $188,368.

63.     Any and all conditions precedent to bringing this action have been satisfied or waived.

WHEREFORE, Hartford respectfully requests the following relief:

A)     a judgment of specific performance requiring Defendants:

   1)  to deposit with the Court collateral in the amount of $188,368 in the form of a bond or funds in escrow to serve as security for Hartford's anticipated obligations and exposure arising out of the Bonds issued under the GIA;

   2)  to remit payment to Hartford in an amount to be proven at trial, plus interest and attorney's fees pursuant to the GIA, as reimbursement for costs, losses, and damages incurred and monies expended by Hartford as a result of the Bonds issued under the GIA;

   3)  requiring Defendants to:

        i.  render a full and complete accounting of all assets owned by any of them or in which any of them have an expectation or other interest, including any outstanding claims, as well as an accounting of any outstanding payment obligations, and

       ii.  to provide Hartford access to all of Defendants' books, records, documents, credit records, and accounts for the purpose of examining and copying them; and

B) A judgment of specific performance and exoneration requiring Defendants to discharge all debts or liabilities incurred or likely to be incurred by Hartford as a result of its issuance of the Bonds under the GIA in an amount to be determined at trial, and to date reasonably estimated to be at least $188,368, plus interests, costs and attorneys' fees that continue to accrue; and

13

C)  An order requiring Defendants to pay Hartford its costs, losses, and damages of whatsoever kind and nature, including legal costs and attorney's fees, incurred in enforcing Hartford's rights under the GIA, and granting Hartford such other and further relief as this Court deems just and proper under the circumstances.

## COUNT III
### QUIA TIMET

64.     Hartford incorporates by reference Paragraphs 1 through 63 as though fully set forth herein.

65.     As a result of Defendants' actions, Hartford has reasonable grounds to believe it may incur substantial liability and will suffer losses, fees, costs, and expenses as a consequence of the Bonds issued on behalf of Vista.

66.     Defendants are jointly and severally obligated under the doctrine of *quia timet* to post collateral security to protect Hartford against all future claims, losses, fees, costs, and expenses that will result from Hartford's issuance of the Bonds to Vista.

67.     To date, Defendants have failed to deposit collateral with Hartford in an amount sufficient to protect Hartford from any current or future claims, losses, fees, costs, and expenses under the Bonds.

68.     Hartford has no adequate remedy at law for the injuries proximately resulting from Defendants' failures to satisfy their obligations to deposit collateral with Hartford.

69.     Any and all conditions precedent to bringing this action have been satisfied or waived.

WHEREFORE, Hartford respectfully requests the following relief:

A) A judgment of specific performance requiring Defendants to:

    1) deposit with the Court collateral in the amount of $188,368 in the form of a bond or funds in escrow to serve as security for Hartford's anticipated obligations and exposure arising out of the Bonds issued under the GIA; and

    2) remit payment to Hartford in an amount to be proven at trial, plus interest and attorney's fees pursuant to the GIA, as reimbursement for costs, losses, and damages incurred and monies expended by Hartford as a result of Bonds issued under the GIA; and

B) A judgment of specific performance and exoneration requiring Defendants to discharge all debts or liabilities incurred or likely to be incurred by Hartford as a result of its issuance of Bonds under the GIA in an amount to be determined at trial, and to date reasonably estimated to be at least $188,368, plus interest, costs and attorneys' fees that continue to accrue;

## COUNT IV
### DECLARATORY JUDGMENT

70.    Hartford incorporates by reference Paragraphs 1 through 69 as though fully set forth herein.

71.    To date, as detailed above, Defendants have failed to comply with their obligations under the GIA by failing to indemnify Hartford, failing to deposit collateral upon Hartford's demand, and failing to maintain contract funds for the purpose of fulfilling Vista's obligations under the Bonds and the GIA.

72.     For these reasons and those discussed in detail above, an actual controversy exists between Hartford and Defendants regarding Hartford's current and prospective rights to collateral and indemnification.

73.     Unless and until Defendants fully satisfy their obligations under the GIA, Hartford is entitled to all rights and remedies provided under the express and implied terms of the GIA, plus all rights and remedies arising at law or equity.

WHEREFORE, Hartford respectfully requests this Court issue a declaration of Hartford's right to immediately recover, from each Defendant, jointly and severally, $188,368 in collateral, plus interest and any and all costs and attorneys' fees incurred or to be incurred by Hartford as a result of and pursuant to the GIA and any of the Bonds issued for or on behalf of Vista.

Dated: February 18, 2016                **HARTFORD FIRE INSURANCE COMPANY**

                                        _____/s/_____
                                        Arnie B. Mason, Esq. (D.C. Bar No. 481084)
                                        Margeaux A. Thomas, Esq. (D.C. Bar No. 986974)
                                        **WILLIAMS MULLEN PC**
                                        8300 Greensboro Drive, Suite 1100
                                        Tysons Corner, Virginia 22102
                                        (703) 760-5200 (telephone)
                                        (703) 748-0244 (facsimile)
                                        amason@williamsmullen.com
                                        mathomas@williamsmullen.com

                                        *Counsel for Plaintiff*
                                        *Hartford Fire Insurance Company*

27978593_5

16